## TERMINATION OF A TRUST.

Common Pleas Court of Hamilton County.

ISABELLE P. BURKHARDT v. MARGARET P. MALEY, ET AL.

(Decided November 23, 1923.)

*Partition—Proof by Plaintiff of Ownership of Legal Title Not Indis-
pensible—Automatic Termination of a Trust—Control of Property
by Trustees Lost Notwithstanding Provision in the Will.*

1. When a trust is limited to the life of one beneficiary and the ar-
rival at majority of another, such trust automatically terminates
at the happening of the death of the one and the coming of age
of the other, the termination occuring by reason of the entire ful-
fillment of the object of the trust, and the legal title to the prop-
erty vests at once in the *cestui que trustents.*

2. The control of the trustees over the property ceases at the termina-
tion of the trust, notwithstanding a provision in the will requir-
ing them, at such termination, to "divide said property, real and
personal, and pay over the same   *   *   *."

3. The only duty of the trustees after the fulfillment of the trust is
the non-discretionary duty of executing and delivering a deed
transferring the title to those entitled thereto.

4. In an action for partition it is not indispensible that the plaintiff
prove owenrship of a legal title.

*Samuel B. Hammel,* for plaintiff.
*David Davis, William G. Roberts, Charles A. Minten,* for con-
testing defendants.
*D. T. Hackett,* for cross-petitioner, Margaret P. Maley.

MATTHEWS, J.

This is an action in partition in which it appears that all
the parties beneficially interested in the real estate sought to
be partitioned derive their titles from the wills of William W.
Porter and Ellen Porter.

William W. Porter died some time prior to the 23rd day of
March, 1905, and Ellen Porter, his widow, died some time prior
to the 20th day of March, 1918, upon which dates their respective

wills were admitted to probate, and the defendants David Davis and William G. Roberts, were duly appointed executors and trustees.

The only defense made to the claim of the plaintiff for partition, is that by the terms of said wills the legal title to the real estate in question was devised to the executors and trustees in trust, and that this trust still exists, and that therefore the plaintiff has not the legal title to an undivided interest in the real estate, and that to permit a partition would interfere with the performance by the trustees of their duties under said wills.

In order to pass upon the validity of this defense it is necessary to consider only the second items in said wills, which are in identical language.    By these items the testator and testatrix disposed of their property as follows:

''I give, devise ad bequeath all my property, both real, personal and mixed, and of every nature and description whatsoever and wheresoever the same may be located or situated, of which I may die possessed, to William G. Roberts and David Davis to them and survivor of them, their heirs and assigns, forever, in trust for the following purposes, viz:

''To manage and control, invest and reinvest in their or the survivor's discretion, make all deed or deeds and conveyances in fee simple or otherwise, and all acquitances of title without the intervention of any Court, and no purchaser nor purchasers need look to the application of the purchase money. And to manage and control all investments. pay all taxes, insurance, repairs and do all things necessary in and about the management of the same, in their or the survivors discretion, and to pay over the net income, rents and profits to my dear wife Ellen Porter, for and during the term of her natural life, and at her death, if there be any minor child or children, then to support, maintain and educate said minors until they arrive at their respective majorities of eighteen and twenty-one years respectively under the laws of Ohio, and after the happening, of the death of Ellen Porter and the arrival at majority of the youngest child, then to divide said property, real and personal and pay over the same to the said children of William W. Porter and Ellen Porter all the net residue of said property and proceeds thereof, share and share alike, absolutely.''

At the time of the death of Ellen Porter the youngest child had reached the age of majority. The purpose, therefore, of creating the trust estate ceased upon the death of Ellen Porter, as to the will of William Porter; and the conditions for calling into existence a trust estate had ceased to exist as to the property of Ellen Porter prior to her death and the taking effect of her will. The trustees, however, urged that the legal title to this property is lodged in them, and that they have a right to control the property and dispose of it in their discretion, and divide the proceeds among those beneficially entitled, and that they are not to be interfered with in that respect by the order of any court.

It seems to the Court that this position of the trustees is untenable. The general rule on the subject of the termination of trusts is stated in 26 R. C. I., page 1210 in this language:

"On the termination of the period of time to which an active trust is limited by the terms of its creation, the trust ceases and the estate becomes vested in the parties entitled to it at that time, by operation of law and without a conveyance. Likewise a trust is terminated by the entire fulfillment of its object, or by its object becoming impossible or unlawful, * * * Whatever may be the limitations imposed by an instrument which creates an active trust, and whatever estate the trustee takes in the beginning, the legal estate in the trustee is divested out of him, and passes into the cestui que trust, on the instant that the duties and powers of the trust, from any cause, cease to be active, or cease to require a legal title in the trustee."

And, on page 1213 the same author says:

"On the termination of a trust the trustee cannot rightfully do any further act under the trust, unless it be that of executing some transfer to the person equitably entitled thereto. No such transfer, however, seems to be necessary, because on the occurrence of the contingencies which terminate the trust his title must be regarded as at an end and the whole title, both legal and equitable, as vested in the person for whose benefit the property has been held in trust, or as having returned to the creator of the trust or his heirs or other successor in interest."

The purpose of the trust was to manage and control the property during the life estates and the minority of the youngest child, and pay the net income to the life tenant and support the minors. Therefore, upon the death of the life tenant and the arrival at majority of the youngest child, the entire purpose of the creation of the trust ceased, and under the rule stated in Ruling Case Law, which is supported by the uniform tenor of the authorities, the legal title to the property vested in those entitled under the terms of the will, and the former trustees ceased to have any title whatsoever.

They did, however, owe a duty to those entitled, to execute such conveyances as might be deemed advisable to make clear the title of those entitled, and this rule is stated by the same author at page 1213, in this language:

"But where a trust on which real estate was conveyed has failed and the trust becomes impossible of performance, it is the duty of the trustee to reconvey to his grantor, and a court of equity, if applied to, will compel a re-conveyance. Under these circumstances a re-conveyance will be presumed in equity and at law as well. It is not necessary that the presumption should rest on the basis of proof that the conveyance had in fact been executed. It is made because right and justice require it. But a re-conveyance is to be presumed only in the absence of proof to the contrary."

The term of this will imposed no duty upon the trustees with reference to managing, controlling or disposing of the property after the death of the life tenant and the arrival at majority of the youngest child. Therefore, the only duty resting upon them was such duty as was created by law, making it incumbent upon them to do such acts as were necessary to show the closing of the trust estate, and conferring upon those entitled both the legal and equitable titles to the property; and, inasmuch as all the debts incurred in the administration of the trust had been paid, if any duty on the part of the trustees existed at all it was a non-discretionary duty to execute and deliver a deed transferring the title to those entitled upon the termination of the trust estate.

Counsel rely upon the case of *Collier* v. *Grimesey et al.,* 36 O. S., 17. That case involved the doctrine of equitable conversion. The court construed the will under consideration and held that it imposed an absolute duty upon the executors to sell the real estate and distribute the proceeds, and that, therefore, there was in fact and in law no devise of any real estate except to the executors and trustees; that the will showed the testator intended to effect a conversion of the real estate into money, and to bequeath the money. This is shown by the second paragraph of the syllabus, which is as follows:

"That the direction to sell the land was not contingent upon the termination of the estate of the widow *before* Samuel became of age; but that the direction to sell was imperative, and that the time of the sale was to be after Samuel became of age, and after the widow's estate ceased."

And, at page 23 of the opinion, where the court says:

"The direction to sell the land is imperative, and, it seems to us, the duty of making the sale is imposed on the executors. There is no discretion vested in them whether the lands shall be sold or not. The direction is that the real estate shall be sold, and the proceeds of the sale divided among the persons designated.

"The bequest is of money, the proceeds of the sale of the land, and not of the land."

The rule followed in *Collier* v. *Grimesey, supra,* is in accordance with the general rule as stated in 6 R. C. L., pages 1075 and 1076, as follows:

"To establish a conversion the direction to convert must be positive and explicit, and the will, if it be a will, or the deed, if it be by contract, must decisively fix on the land or the money the character intended to be given to it. In other words, there must be an imperative absolute direction to convert irrespective of all contingencies, and independent of all discretion."

In the wills under consideration in this case, there is no such imperative direction to convert real estate into money and

to distribute the money. In fact, the only reference to sales by the executors and trustees is not a direction to sell, but simply a power of sale to be exercised by them during the existence of the trust estate. It is true that the will provides that upon the termination of the trust estate the trustees are—"to divide said property, real and personal, and pay over the same to the said children of William W. Porter and Ellen Porter all the net residue of said property and proceeds thereof, share and share alike, absolutely."

This direction is to divide the property real and personal. If the testator had contemplated that the trustees should convert all the property into money there would have been no direction to divide the property real and personal. The reference to proceeds in this part of the will was manifestly inserted because of the power, not direction, to the trustees to invest and re-invest, etc., during the trust. The testator was careful to provide that upon the termination of the truste estate the trustees should distribute all the property of the trust irrespective of whether it was in its original form, or in any converted form. So the court reaches the conclusion that upon the death of Ellen Porter, the youngest child having arrived at majority, the purpose for which the trust was created was entirely fulfilled, and that as a matter of law the legal, as well as the equitable title to the property then under the control of the trustees, became vested in the children of William W. Porter and Ellen Porter, under the terms of their wills. That by the terms of said wills there was no direction to the trustees to sell said property and divide the proceeds, and that the property in the form in which it was at the time of the termination of the trust estate became immediately both legally and equitably vested in said children.

This conclusion is sufficient to dispose of this case. However, as the court understands the law, it is not indispensable that a plaintiff in a partition case prove ownership of a legal title.

In the case of *Lindsay* v. *Zanoni*, 6 O. O., 474, it was held

as stated in the third paragraph of the syllabus that:

"While uder the terms of said will, Jane Gandolfo during her life was entitled as Trustee to hold the shares so directed to be aparted to each of said children, during their respective lives, and on her death her heirs as Trustees had the same right, such trust ceased as to the shares of each child on his or her death. And the fact that as to the two of said children still living, said trust may still continue, this will not operate to deprive those entitled to the shares of the deceased children from asserting their right to have their shares set off in severalty."

And, at page 477, the court says:

"And even if the share of the estate claimed by the plaintiffs had by the will in question been placed in the hands of a trustee for a certain period, as during the life of a third party, and then the beneficial interest was to pass to another, but there was no provision for the transfer to such person of the legal title when the trust ceased, a court of equity on the application of such person for the partition of the land, would cause his interest to be set off to him in severalty."

The decision in the foregoing case was in accordance with the rule laid down in *Byers* v. *Wackman*, 16 O. S., 441, in which the court said at page 443:

"In a statutory proceeding for partition, a legal title in the defendant is necessary. If his title is equitable merely, the proceeding should be under the code for an equitable partition, and the defendant should be brought into court by process."

A later decision to the same effect is that of *Roberts* v. *Remy*, 56 O. S., 249, in which the court decreed partition notwithstanding the bare legal title was not in the plaintiff. The court says at page 257:

"Here, the life estate of the widow having terminated by her death, the plaintiff and her two brothers are the owners of the complete equitable estate as tenants in common, and entitled to have the same partitioned amongst them, and their title quieted as against the claim of the plaintiff in error."

The same liberal construction was placed upon our partition statutes in the case of *Black et al* v. *Sylvania Producing Co.*, 105 O. S., 346, the court deciding as stated in the syllabus, that:

"The right of partition, either under the statute or in equity, is remedial in its nature, and should be liberally construed."

And applying that rule of construction to the facts in that case, the court held that an owner of an undivided interest of a leasehold estate, was entitled to compel partition either under the statute or in accordance with the rules and practice of equity, which are still in force in Ohio notwithstanding the statutory provisions for partition.

For the foregoing resasons the court finds in favor of the plaintiff, and a decree may be entered in accordance with the prayer of the petition.